# EXHIBIT

# A-2

Filed
10 November 2 P4:37
Amalia Rodriguez-Mendoza
District Clerk
Travis District
D-1-GN-10-003891

NO. <u>D-1-GN-10-003891</u>

| | | |
|---|---|---|
| TRAN Q. THIET AND CHAT THIET | § | IN THE DISTRICT COURT |
| Plaintiffs, | § | |
| | § | |
| V. | § | 53RD   JUDICIAL DISTRICT |
| | § | |
| CHASE HOME FINANCE, LLC and | § | |
| JPMORGAN CHASE BANK | § | |
| Defendants. | § | TRAVIS COUNTY, TEXAS |

# PLAINTIFFS' ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COME** Tran Q. Thiet and Chat Thiet (the "Thiets"), Plaintiffs herein, and file this

Original Petition against Chase Home Finance, LLC and JPMorgan Chase Bank, Defendants herein,

and in support thereof would respectfully show the Court as follows:

## DISCOVERY CONTROL PLAN LEVEL

1.      Plaintiffs intend that discovery be conducted under Discovery Level 2.

## PARTIES AND SERVICE

2.      Plaintiff, Tran Q. Thiet brings this action individually.  Plaintiff resides at 6003 Rain

Creek Parkway, Austin, Travis County, Texas 78759.

3.      Plaintiff Chat Thiet brings this action individually.  Plaintiff resides at 6003 Rain

Creek Parkway, Austin, Travis County, Texas 78759.

4.      Defendant JPMORGAN CHASE BANK ("Chase"), is a national banking association,

which is registered and does business in the State of Texas.  Defendant Chase may be served with

process by serving the registered agent of the company, CT Corporation, 350 N. Saint Paul Street,

---

Suite 2900, Dallas, TX 75201-4234. Service of Defendant as described above can be effected by personal delivery.

5.      Defendant Chase Home Finance, LLC ("CHF"), is a limited liability company, which is registered and does business in the State of Texas. Defendant CHF is wholly owned by Chase and may be served with process by serving the registered agent of the company, CT Corporation, 350 N. Saint Paul Street, Suite 2900, Dallas, TX 75201-4234. Service of Defendant as described above can be effected by personal delivery.

## JURISDICTION AND VENUE

6.      The subject matter in controversy is within the jurisdictional limits of this court.

7.      This court has jurisdiction over the parties because Defendants are corporations doing business in Texas.

8.      Venue in Travis County, Texas is proper in this cause under Section 15.011 of the Texas Civil Practice and Remedies Code because this action involves real property as provided by said Section, and this county is where all or part of the real property is located. Alternatively, venue is proper in Travis County under Section 15.002(a)(1) of Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in this county.

## FACTS

9.      The Thiets are the current residents and claim ownership of the real property known locally as 6003 Rain Creek Parkway, Austin, Travis County, Texas 78759 (the "Property"), which is more fully described as follows: Lot 75, Block A, Great Hills Section X, Travis County, Texas.

10.     The Thiets purchased the Property in 2003 and financed the transaction through State Farm Bank.  On or about April 24, 2007, the Thiets refinanced their State Farm Bank loan through Chase executing a promissory note in the amount of $490,500.00, Loan No. 1294020150, which was secured by a Deed of Trust filed under Document No. 2007080505, Official Public Records, Travis County, Texas.  A significant factor in the Thiets decision to refinance their original loan was Chase's representation that their monthly mortgage payment would be $2,810.6, which included no escrow amounts.  Chase represented and agreed to waive any escrow account in return for the Thiets agreeing to pay all real estate taxes and insurance premiums when "due and before any penalties were levied".  The Thiets have paid all insurance premiums annually, but since the Thiets have an "over 65 exemption" on their property, the real estate taxes are not due until the Property is sold and no penalties have been levied.

11.     Since the purchase and refinancing, the Thiets have resided in and used the Property as their primary residence.

12.     In early 2009, the Thiets, who are both over the age of 75 and are living off their retirement funds, were having trouble paying their mortgage payments.  Mr. Thiet contacted Chase inquiring about a modification of their loan to lower their monthly mortgage payments.  Chase personnel informed Mr. Thiet that he would not qualify for the modification program unless they missed at least 2 monthly mortgage payments.  Mr. Thiet was also informed by Chase that, although they missed the mortgage payments, his credit would not be affected.  In any event, the Thiets failed to pay 2 mortgage payments as suggested by Chase personnel and then filed an application to have their mortgage modified.

13.     Thereafter on May 11, 2009, the Thiets received a letter from Chase setting forth conditions for a forbearance plan.  Surprisingly, the letter also contained a statement that agreeing to the forbearance plan would not alter any reporting made to the Credit Bureaus by Chase and that any delinquency would be reported in accordance to the terms of the Note and security instrument without regard to the forbearance plan agreement. In any event, the Thiets signed the forbearance plan agreement and satisfied the conditions set forth in the letter by paying $10,000.00 on or before May 15, 2009, $2,785.00 by June 1, 2009 and $2,785.00 by July 1, 2009. The Thiets responded to every request by Chase and provided Chase with all information requested by Chase to obtain the modification to their loan.

14.     On December 8, 2009, the Thiets received a letter from Chase with a proposed agreement to modify their loan (See Exhibit "A" attached hereto). The letter represented that if the Thiets signed the agreement and returned it to Chase as required, Chase would process the loan modification.   They signed the proposed agreement and promptly returned 2 copies to Chase and complied with all other requirements of Chase, including paying the monthly payment of $2,793.25 beginning February 1, 2010, as stated in the December 8, 2009 letter.  None-the-less, Chase has never signed the Modification Agreement and continues to request the same information from the Thiets that it requested before they sent the proposed modification agreement to the Thiets, probably in hopes that the Thiets would not comply, and Chase would have a way out of the modification agreement. On two occasions, Chase sent the Thiets new applications for modification, stating that the Thiets had requested them.  This is false, because the Thiets never requested new applications while their application was being processed and after their modification had been signed.

15.     In spite of their troubles with Chase, the Thiets continue to pay their regular monthly mortgage payment of $2,793.25 as stated in the December 8, 2009 letter, and are current on their mortgage payments.   However, Chase contends that the Thiets are 5 months behind on their mortgage payments. If this is so, the failure of Chase to sign the Modification Agreement in a timely manner has cost the Thiets in that they have to pay their higher interest rate loan.  In addition, Mr. Thiet's credit score has been greatly reduced because Chase reported him to the credit bureaus for missing two payments. It would be very difficult, if not impossible, for the Thiets to obtain another loan with his current credit score, although with the credit score Mr. Thiet had before the modification process began, he could have obtained a 3.25% 10 year interest rate.

16.     In addition to the problem with the Modification Agreement, Chase has created an escrow account for taxes associated with the Property. In the original loan documents, Chase agreed to waive its requirement to establish an escrow account to collect monthly payments for real estate taxes and hazard insurance premiums from the Thiets. In return for that agreement, the Thiets agreed to pay all real estate taxes and insurance premiums for any non-escrowed items "when due and before any penalties are levied." Under the "over 65 exemption" (Mr. Thiet is over 80 years of age), the real estate taxes are due when the property is sold and not on a yearly basis as in the normal case. Chase has been advised of this exemption and how it works on numerous occasions.  However, Chase has still created an escrow account, funded it themselves, paid the taxes, and added the payments to the Thiets' loan in an attempt to extricate more money from the Thiets. It appears that Chase has applied many of the Thiets monthly mortgage payments to the payment of the escrow account and Chase now claims that the Thiets are delinquent in payment of 5 monthly payments. The Thiets are both over 75 years of age, live on a fixed income, and cannot afford the additional

monthly payment Chase wants them to pay to keep the taxes current on a yearly basis and to pay the taxes incurred for prior years.  This has caused the Thiet's much stress and mental anguish.

17.     The Thiets and their attorney have attempted to communicate with Chase and CHF on many occasions in an attempt to resolve the above stated problems.   However, Mr. Thiet and their attorney are constantly switched from department to department, with no one interested in resolving the problem other that having the Thiets pay what CHF thinks is owned on the loan.  Specifically, the Thiets made a qualified written request to CHF requesting a complete accounting of their account with Chase.  On March 31, 2010, CHF responded to the Thiets written request by stating they were investigating the Thiets' issues.  Then, on May 20, 2010, CHF sent the Thiets a Loan Transaction History and an Escrow Analysis Statement (both computer generated documents), suggesting that this answered all of the Thiets questions.   When Mr. Thiet attempted to call the number listed in the May 20, 2010 letter for assistance, the person answering was not able to adequately explain the documents to Mr. Thiet.   Also, on or about March 31, 2010, the Thiets began receiving letters from CHF informing them that the taxes for the Property were delinquent, which was false, since the Thiets have an "over 65 exemption" and a deferral of tax payments until the Property is sold.  Such letter informed the Thiets that, if the taxes were not paid within 30 days, Chase would pay them and add them to the loan, which would increase the monthly loan payment. Chase knew that the Thiets had a deferral because the Travis County Assessor Collector had notified Chase on January 16, 2009 of the deferral status.  However, on June 4, 2010, the Thiets received a letter from CHF informing them that Chase paid $27,581.05 on their taxes for 2007, 2008, and 2009, and had established an escrow account for the payment of taxes.  The letter also informed the Thiets that they would be provided a new mortgage payment schedule.  Mr. Thiet has become frustrated with dealing with

CHF and its numerous departments, never getting the same answer and no one seeming able to address his problems.

18.     On or about September 24, 2010, the Thiets received a letter notifying them that if they did not pay the amount of $9,252.81 within 32 days, Chase would accelerate the maturity of the loan and start foreclosure proceedings.  The Thiets' attorney has attempted to call the number provided for assistance, but, after explaining the problem, has been referred in a circular manner between departments, with their only interest in being to collect information about the Thiets and no one interested or being able to help resolve the problems.

## MISREPRESENTATIONS AND FAILURES

19.     First, Chase represented to the Thiets that it would waive the establishment and collection of any escrow account, as long as the Thiets paid the real estate taxes when due and before the assessment of any penalty.  This was a false representation in that Chase never intended to waive the escrow account as long as the real estate taxes were paid when due and before an assessment of any penalty, but only waived the escrow account if the real estate taxes were paid annually.  In that regard, the Thiets have an "over 65 exemption" on the Property, so the payment of real estate taxes on the Property is deferred until the Property is sold.  Accordingly, the Thiets have not paid any taxes for prior years and no penalties have been levied.

Secondly, Chase has been aware of or should have been aware of the Thiets "over 65 exemption" from the inception of the loan, since the Thiets are both over the age of 65 and live in Texas where this exemption is common. However, Chase failed to inform the Thiets that Chase does not recognize the deferral of tax payments under the "over 65 exemption".  Accordingly, Chase has paid all unpaid real estate taxes on the Property levied prior to 2010, added it to the loan,  and is

placing in escrow a portion of the Thiets' monthly payments for the payment of unpaid, but not yet due, property taxes on the Property.

Thirdly, Chase represented to Mr. Thiet that missing 2 loan payments and applying for a modification of their loan would not be reported to any credit bureaus and would not affect their credit rating.  This was a false representation in that Chase has reported all of this to the credit bureaus.

Finally, Chase represented that if the Thiets completed the application process and signed the proposed loan modification agreement that the modification would be approved.  This was a false representation in that Chase has not approved the loan modification agreement and apparently had no intention of ever approving the loan modification agreement.

# CAUSES OF ACTION

## VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT

20.     The foregoing paragraphs 9 through 20 are incorporated by reference.

21.     The misrepresentations above in paragraph 20, constitute false, misleading and deceptive acts, practices and/or omissions actionable under the Texas Deceptive Trade Practices - Consumer Protection Act (Texas Business and Commerce Code, Chapter 17.41, et seq.) (the "DTPA").  In particular, Chase's conduct violates DTPA, §§17.46(5), (7), (12), and (24).

22.     Moreover, Chase engaged in an "unconscionable action or course of action" to the detriment of the Thiets as that term is defined by Section 17.45(5) of the Texas Business and Commerce Code, by its misrepresentations as set forth in paragraph 17 above.  Further, Chase took advantage of the lack of knowledge, ability, experience, or capacity of the Thiets to a grossly unfair degree.

23.     The conduct of Chase and CHF, as described in this petition, was committed knowingly and/or intentionally, as those terms are defined by the DTPA. Accordingly, Chase and CHF are liable to the Thiets for additional damages as provided by the DTPA.

24.     The Thiets would further show the acts, practices and/or omissions complained of were relied upon by them to their detriment.

25.     Each of the above-referenced acts and omissions, whether taken singularly or in combination with others, were producing causes of damage to the Thiets exceeding the minimum jurisdictional limits of this court. The Thiets seek recovery of their economic damages, damages for mental anguish, additional damages, statutory penalties, and any other relief which the court deems proper under the DTPA.

26.     The Thiets were consumers as that term is defined in the DTPA in that the Thiets sought or acquired goods by purchase, and the transaction gives rise to the Thiets' claims as described herein.

27.     Chase and CHF were engaged in trade or commerce as that term is defined under the DTPA.

28.     The Thiets have been required to obtain legal counsel to prosecute this action against Chase and CHF. The Thiets are, therefore, entitled to a sum that is a reasonable fee for the services rendered and to be rendered in this suit by their attorney. In the event of an appeal to the Court of Appeals, the Thiets would be entitled to the further sum of $20,000.00 as a reasonable attorney's fee; and, in the event of an appeal to the Texas Supreme Court, the Thiets would be entitled to the further sum of $10,000.00 as a reasonable attorney's fee.

29.     The Thiets would also show that the giving of 60 days' written notice was rendered impracticable by reason of the necessity of filing suit in order to prevent the threatened foreclosure on the Property by Chase.

## COMMON LAW FRAUD

30.     The foregoing paragraphs 9 through 20 are incorporated by reference.

31.     Chase and CHF committed common-law fraud in that they made the misrepresentations set forth in paragraph 20. Chase and CHF either knew that their representations were false or made the representations recklessly without seeking knowledge to their truth. Chase and CHF made the representations with the intent that the Thiets would act on them in deciding whether to seek refinance of the Property and/or the modification. The Thiets relied on these representations. Because the representations were false, the Thiets suffered damages in excess of the jurisdictional limits of this court.

## NEGLIGENT MISREPRESENTATION

32.     Chase and CHF made the misrepresentations set forth above in paragraph 9 through 20 in the course of a transaction in which they had an interest. In that regard, Chase and CHF supplied false information for the guidance of the Thiets. Chase and CHF did not exercise reasonable care or competence in obtaining or communicating information regarding the loan or the modification. The Thiets justifiably relied on Chase and CHF's representation and Chase and CHF's negligent misrepresentation proximately caused the Thiets' damages.

## BREACH OF CONTRACT

33.     The foregoing paragraphs 9 through 20 are incorporated by reference.

34.     By their conduct, Chase and CHF breached their agreement with the Thiets in regard to the Proposed Modification Agreement.  On December 8, 2009, the Thiets received a letter from Chase with a proposed agreement to modify their loan. The letter represented that if the Thiets signed the agreement and returned it to Chase as required, Chase would process the loan modification within 30 days.   The Thiets accepted and signed the proposed agreement and promptly returned 2 copies to Chase and complied with all other requirements of Chase.  None-the-less, Chase has never signed the Modification Agreement and processed the loan modification.  Chase's failure to process the loan modification as accepted by the Thiets in the proposed agreement was a breach of the Loan Modification Agreement and is the proximate cause of damages to the Thiets in an amount in excess of the jurisdictional limits of this court.

35.     Chase and CHF also breached their "Waiver of Escrow Account" agreement with the Thiets. In that agreement, Chase agreed to waive its requirement to establish an escrow account and collect monthly escrow payments to cover real estate taxes as long as the Thiets paid their taxes when due and before any penalties were levied.   The Thiets have an "over 65 exemption" with the taxing authority and real estate taxes are not due until the Property is sold.  No penalties have been levied against the Thiets on their account with the taxing authority.  None-the-less, Chase and CHF have established an escrow account for the Thiets and appear to be diverting funds from the Thiets monthly mortgage payments to such escrow account.  In addition, Chase and CHF have paid prior year taxes that are not due and have added that amount to the Thiets loan and attempted to raise the Thiets monthly mortgage payments to both fund the escrow account and to pay back prior year taxes

that they paid on the Property. Chase and CHF have no authority to take this action and by doing so they are in breach of their agreement with the Thiets. This breach is the proximate cause of damages to the Thiets in an amount in excess of the jurisdiction limits of this court.

### Attorney's Fees

36.     As a further result of Chase and CHF's breach of the above agreements, the Thiets have been required to obtain legal counsel to prosecute this action against Chase and CHF. The Thiets are, therefore, entitled to a sum that is a reasonable fee for the services rendered and to be rendered in this suit by their attorney. In the event of an appeal to the Court of Appeals, the Thiets would be entitled to the further sum of $20,000.00 as a reasonable attorney's fee; and, in the event of an appeal to the Texas Supreme Court, the Thiets would be entitled to the further sum of $10,000.00 as a reasonable attorney's fee.


## THREATENED WRONGFUL FORECLOSURE

37.     The foregoing paragraphs 9 through 20 are incorporated by reference.

38.     CHF has threatened to foreclose on the Thiets' loan because they allege that the Thiets are five (5) months behind on their monthly mortgage payments. In actuality, Chase has arbitrarily applied a portion, if not all, of the Thiets' monthly mortgage payments, and other payments made by the Thiets, to the payment of taxes, when the taxes are not due. In that regard, the Thiets have an "over 65 exemption", which includes an agreement with the taxing authority that taxes on the Property are not due until the Property is sold. Accordingly, CHF's threatened foreclosure on this basis is without merit and should be enjoined.

39.     CHF's conduct in threatening to foreclose on the Property is wrongful and continues to be malicious and in wanton disregard of the Thiets' rights, in that CHF knew at all times that the Thiets had not been guilty of a default under the terms of their loan and that CHF was not properly entitled to foreclose on the Property.

## DAMAGES

40.     As a direct result of the actions of Chase and CHF, the Thiets have incurred damage to their credit and monetary damages in excess of the jurisdictional limits of this Court.

## CONDITIONS PRECEDENT

41.     All conditions precedent to the Thiets' recovery have been performed or have occurred.

## Jury Demand

42.     The Thiets request, pursuant to the United States Constitution and the Constitution of the State of Texas as well as the Texas Rules of Civil Procedure, that the Court empanel a lawful jury to hear this case, and tenders the appropriate fee accordingly.

## Reservation of Rights

43.     The Thiets specifically reserve the right to bring additional causes of action against Chase and CHF and/or other parties and to amend this petition as necessary.

## Request for Disclosure

44.     Under Texas Rule of Civil Procedure 194, the Thiets request that defendants, Chase and CHF, separately disclose, within 50 days of the service of this Original Petition, the information or material described in Rule 194.2.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** the Thiets respectfully pray that Defendants Chase and CHF be cited to appear, and that upon final hearing hereof, the Thiets be granted judgment for the following:

1. Actual damages in a sum in excess of the minimum jurisdictional limits of the court;

2. Punitive or exemplary damages as provided by statute;

3. Reasonable and necessary attorney's fees, through a trial in the trial court, and additional reasonable and necessary attorney's fees in the event of an appeal;

4. A temporary and permanent injunction keeping Chase from foreclosing on the Thiets' loan with Chase;

5. Pre-judgment and post-judgment interest as provided by law; and,

6. Such other and further relief to which plaintiffs may be justly entitled.

Respectfully submitted,

LAW OFFICES OF RICHARD L. WELCH
8140 MoPac Expressway North
Westpark IV, Suite 260
Austin, Texas 78759
(512) 231-8181
(512) 231-8182 Facsimile

By: _____
RICHARD L. WELCH
Bar No. 21125700
ATTORNEY FOR PLAINTIFFS

# EXHIBIT "A"



**Chase Home Finance LLC**
3415 Vision Drive
Columbus, Ohio 43219
(800) 446-8939 Homeowner's Assistance Department

December 8, 2009

TRAN Q. THIET and CHAT THIET
6003 RAIN CREEK PARKWAY
AUSTIN, TEXAS 78759

Re:  Loan Number 1294020150

Dear Mortgagor/s:

Enclosed is a proposed agreement to modify your loan.  This modification agreement will
not be binding or effective unless and until it has been signed by both you and the lender.
Once all provisions have been met and the modification agreement has become binding
and effective, the mortgage will be modified to reflect the following terms: The current
interest rate will change from 6.875% to 5.000% effective January 1, 2010 through and
including April 1, 2037 (Maturity Date), until principal and interest are paid in full.  The
new Principal & Interest is $2,793.25 and Escrow is $0.00, for a total per month of
$2,793.25 starting with the February 1, 2010 payment, until further notice.

Please forward a **cashiers check or money order (only)**, (payable to Chase Home
Finance LLC) in the amount of $0.00 for the processing fee, delinquent escrow and/or
other costs.  **The next regularly scheduled monthly payment will be due on February
1, 2010.**

**Failure to return these documents and the money by the stipulated date will cause
the modification agreement to be cancelled and the collections and/or foreclosure
process to continue immediately.**

Enclosed are two copies of the modification agreement that must be signed by you and a
notary public and witnessed by two unbiased parties.  **Both copies of the Loan
Modification Agreement and the money must be returned within 72 hours to the
address below:**

> **Chase Home Finance LLC**
> 3415 Vision Drive
> Columbus, OH 43219-6009
> Attention: Homeowner's Assistance Department

**Mortgage payments are due on the first of each month.** You will **not** receive
statements during this process.  It is important during this time that monthly payments be
sent directly to me at the above address (**cashiers check or money order only**).  In
approximately 60 days of receipt of your documents/funds, you will receive a letter from
me directing you where to start sending payment, and monthly statements will
commence.  Late charges will be assessed if payments are not received by the 16th day of
each month.

*Questions?  Please call the Homeowner's Assistance Department at (800) 446-8939.*

Sincerely,

Homeowner's Assistance Analyst
Homeowner's Assistance Department

**Chase Home Finance LLC**
3415 Vision Drive
Columbus, OH 43219
Prepared by Andrea Clark
RE: Loan Number 1294020150
 (800) 446-8939 Homeowner's Assistance Department

## LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

       This Loan Modification Agreement ("Agreement"), made effective the First day of January 2010, between TRAN Q. THIET, and CHAT THIET, ("Borrower") and Chase Home Finance LLC successor by merger to Chase Manhattan Mortgage Corporation ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") to _____, dated _____, and recorded in Volume ____, at Page _____, on _____, of the Records of _____ County, (2) the Note bearing the same date as, and secured by, the Security Instrument ("Note"), (collectively, the "Loan Documents"), which cover the real and personal property described in the Security Instrument and defined therein as the "Property", located at 6003 RAIN CREEK PARKWAY, AUSTIN, TEXAS 78759, with the original principal balance U.S. $490,500.00, and the principal balance before the loan modification being U.S $490,500.00, the real property described being set forth as follows:

       **See Schedule A attached hereto and made a part hereof**
       In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Loan Documents):

1. As of January 1, 2010, the amount payable under the Loan Documents is U.S. $498,977.49 (the "Unpaid Principal Balance") consisting of the amount(s) loaned to the Borrower by the Lender and any interest capitalized to date.

2. The Maturity Date of the above referenced Note has not been amended from May 1, 2037 ("Maturity Date").

3. The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender.  Interest will be charged on the Unpaid Principal Balance at yearly rates as specified below:

    (a) The rate of 5.000% for the payments due from February 1, 2010 through and including April 1, 2037.

4. The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender.  The Borrower promises to make monthly payments of principal and interest as specified below:

    (a) Monthly payments of $2,793.25 for the payments due from February 1, 2010 through and including April 1, 2037.  If on the Maturity Date, the Borrower still owes amounts under the Loan Documents as amended by this Agreement, the Borrower will pay such amounts in full on the Maturity Date.

    **The Borrower will make such payments at P.O. Box 78420, Phoenix, Arizona 85062-8420, or at such other place as the Lender may require.**

5. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may, at its

option, require immediate payment in full of all sums secured by the Loan Documents. If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by the Loan Documents. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by the Loan Documents without further notice or demand on the Borrower.

6. The Borrower also will comply with all other covenants, agreements, and requirements of the Loan Documents, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Loan Documents; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a) all terms and provisions of the Loan Documents (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

    (b) all terms and provisions of any adjustable rate rider or other instrument or document that is affected to, wholly or partially incorporated into, or is part of, the Loan Documents and that contains any such terms and provisions as those referred to in (a) above.

7. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Loan Documents. Except as otherwise specifically provided in this Agreement, the Loan Documents will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

---

Witness 1 Signature                            TRAN Q. THIET

---

Printed Name of Witness

---

Witness 2 Signature

---

Printed Name of Witness

---

Witness 1 Signature                            CHAT THIET

---

Printed Name of Witness

---

Witness 2 Signature

---

Printed Name of Witness

### ACKNOWLEDGEMENT

STATE OF _____
COUNTY OF _____

    Before me, a Notary Public, in and for said County, personally appeared the above named TRAN Q. THIET who acknowledged that he/she did sign the foregoing instrument, and that the same is his/her free act and deed.

    In Testimony Whereof, I have hereunto subscribed my name and affixed my official seal at _____, this _____ day of _____, 20__.

                               _____
                                      Notary Public

My commission expires: _____

STATE OF _____
COUNTY OF _____

    Before me, a Notary Public, in and for said County, personally appeared the above named CHAT THIET who acknowledged that he/she did sign the foregoing instrument, and that the same is his/her free act and deed.

    In Testimony Whereof, I have hereunto subscribed my name and affixed my official seal at _____, this _____ day of _____, 20__.

                               _____
                                        Notary Public

My commission expires: _____

Loan Number 1294020150

Chase Home Finance LLC
successor by merger to Chase
Manhattan Mortgage Corporation

_____
Witness 1 Signature

_____
Christopher Stump
Assistant Vice President

_____
Printed Name of Witness

_____
Witness 2 Signature

_____
Printed Name of Witness

STATE OF OHIO
COUNTY OF FRANKLIN

    Before me, a Notary Public, in and for said County, personally appeared Christopher
Stump, to me known and known to the person who, as an Assistant Vice President of Chase
Home Finance LLC successor by merger to Chase Manhattan Mortgage Corporation, the
corporation which executed the foregoing instrument, signed the same, and acknowledged to me
that said person did so sign said instrument in the name and behalf of said corporation as such
officer; that the same is that person's free act and deed as such officer, and the free and corporate
act and deed of said corporation; that said person was duly authorized thereunto by its Board of
Directors.

    In Testimony Whereof, I have hereunto subscribed my name, and affixed my official seal,
at Columbus, Ohio, this _____ day of _____, 20__.

_____
Notary Public

My commission expires: _____

# DOCUMENT CORRECTION AGREEMENT
## ("Agreement")

Loan No.  1294020150 (the "Loan")

**AGREEMENT TO CORRECT MISSTATED DOCUMENTS AND TO PROVIDE ADDITIONAL DOCUMENTATION OR FEES:** In consideration of Chase Home Finance, LLC as Servicing Agent ("Chase") modifying the Loan (the "Modification") as requested by the undersigned ("Borrower"), and regardless of the reason for any loss, misplacement, or inaccuracy in the modification agreement or any other document prepared in connection with the Modification, Borrower agrees as follows:  if any document is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of the Modification, upon request of Chase, Borrower will comply with Chase's request to execute, acknowledge, and deliver to Chase any documentation ("Replacement Documents") Chase deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s).  Borrower agrees to deliver the Replacement Documents within ten (10) days after receipt by Borrower of a written request for such replacement.  Borrower also agrees that upon request Borrower will pay to Chase any additional sum ("Fee") previously disclosed to Borrower as a cost or fee associated with the Modification, which, for whatever reason, was not previously collected.

**REQUEST BY CHASE:** Any request under this Agreement made by Chase, (including assignees and persons acting on behalf of Chase), shall be prima facie evidence of the necessity for same.  A written statement addressed to Borrower, first class postage prepaid, at the mailing address indicated in Chase's records shall be considered conclusive evidence of receipt by Borrower of the request for Replacement Documents.

**BORROWER LIABILITY:** If Borrower fails or refuses to execute, acknowledge, and deliver the Replacement Documents or Fee to Chase more than (10) days after being requested to do so by Chase, Borrower shall be liable for any and all loss or damage which Chase reasonably sustains thereby, including, but not limited to all reasonable attorneys' fees and costs incurred by Chase.  In addition, Chase may elect to declare the Modification null and void in which case the Loan shall be payable at the rate and on the terms as existed prior to the Modification.  Any funds received by Chase in conjunction with the Modification shall be retained by Chase and applied to the Loan as determined by Chase in its discretion.


_____          _____Date
TRAN Q. THIET

_____          _____Date
CHAT THIET